Filed 6/24/21 (unmodified opinion attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| BRIGHTON COLLECTIBLES, LLC, <br><br>   Cross-complainant and Appellant, <br><br> v. <br><br> NATALIE HOCKEY, <br><br>   Cross-defendant and Respondent. | 2d Civ. No. B307235 <br> (Super. Ct. No. 19CV06616) <br> (Santa Barbara County) <br><br> ORDER MODIFYING OPINION AND DENYING REHEARING <br> [NO CHANGE IN JUDGMENT] |

THE COURT:

It is ordered that the opinion filed herein on June 3, 2021, be modified as follows:

1. On page 5, the last paragraph beginning with "The evidence submitted during the proceedings below . . ." and ending on page 6 with "No more was required at this stage of the proceedings" is deleted and replaced with:

> The evidence submitted during the proceedings below shows that Brighton's fraud cross-claim has the

requisite minimal merit. To defeat Hockey's anti-SLAPP motion to strike its fraud claim, Brighton had to produce prima facie evidence that: (1) Hockey failed to disclose a material fact, (2) Hockey had a duty to disclose that fact, (3) Hockey intended to induce Brighton to rely on the fact, (4) Brighton justifiably relied on it, and (5) damages. (*Boschma v. Home Loan Center, Inc.* (2011) 198 Cal.App.4th 230, 248; see also *Lazar v. Superior Court* (1996) 12 Cal.4th 631, 638 [defining elements of fraud].) Here, Brighton submitted evidence that Hockey concealed a material fact when she failed to tell the company she expected payment immediately upon her "termination" as an "employee" when the photoshoot concluded. She had a duty to disclose that fact to Brighton since the terms of her contract provided that the company would pay LA Models for her services upon receipt of an invoice. (See *LiMandri v. Judkins* (1997) 52 Cal.App.4th 326, 336 [duty to disclose exists where one makes partial representations but suppresses other material facts].) It can be inferred that Hockey intended for Brighton to rely on the concealed fact—and that Brighton justifiably did so—given that (a) those were her instructions to Brighton, and (b) her instructions comported with standard industry practices. Reliance on the concealed fact damaged Brighton by exposing it to $90,000 in waiting-time penalties plus attorney fees and costs—in addition to the costs Brighton incurred in defending itself against Hockey's lawsuit. No more was required at this stage of the proceedings.

2

There is no change in judgment.

Respondent's petition for rehearing is denied.

_____

GILBERT, P. J.        PERREN, J.        TANGEMAN, J.

Filed 6/3/21 (unmodified opinion)
**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| BRIGHTON COLLECTIBLES, LLC,<br><br>   Cross-complainant and Appellant,<br><br>v.<br><br>NATALIE HOCKEY,<br><br>   Cross-defendant and Respondent. | 2d Civ. No. B307235<br>(Super. Ct. No. 19CV06616)<br>(Santa Barbara County) |

      Natalie Hockey directed her modeling agency to negotiate a contract on her behalf with Brighton Collectibles, LLC. They agreed that Brighton would pay Hockey $3,000 for a one-day photoshoot. They also agreed on how and when payment would be made.

      After the photoshoot, Brighton paid Hockey according to the terms of their contract. But Hockey wanted more for her single day of work. She sued Brighton, alleging that Brighton failed to comply with state law despite adhering to the terms of the contract it negotiated with her own agent. She claimed she

was due the full $3,000 on the day of the shoot, and Brighton's failure to pay entitled her to $90,000. Here we decide that such deceit, if proven at trial, does not entitle her to a bonus.

Brighton appeals from the trial court's order granting Hockey's anti-SLAPP motion to strike Brighton's cross-claim for fraud. (Code Civ. Proc., § 425.16.) Brighton contends the court's order should be vacated because: (1) Hockey did not show that Brighton's cross-claim arose out of protected conduct, rendering the anti-SLAPP statute inapplicable, and (2) even if the anti-SLAPP statute does apply, Brighton produced prima facie evidence in support of its claim. We vacate the trial court's order.

FACTUAL AND PROCEDURAL HISTORY

Hockey is a fashion model. She was represented by LA Models, Inc. Their agreement provided that LA Models would negotiate contracts for Hockey and collect payment on her behalf.

Brighton designs, manufactures, and sells women's fashion accessories. In October 2018 Brighton selected Hockey to model some of its products. Brighton negotiated an agreement with LA Models that provided that Hockey would participate in a one-day, 10-hour-long photoshoot in exchange for $3,000 and specified usage rights. The agreement also provided that LA Models would invoice Brighton for Hockey's work, that Brighton would pay LA Models, and that LA Models would pay Hockey. The invoice would direct Brighton to "make checks payable to L.A. Models, Inc." These terms were consistent with standard industry practice.

The photoshoot took place on October 4. LA Models invoiced Brighton for Hockey's work on October 29. The invoice

2

said that payment was due "upon job completion." Brighton paid the invoice with a check dated December 7.

Hockey sued Brighton for failing to pay her immediately upon completion of the photoshoot. She claimed that Brighton "employed" her for the shoot and as such payment was due at the end of the day—i.e., upon "discharge from her employment." (Lab. Code, § 201, subd. (a).) Hockey sought $90,000 in waiting-time penalties plus attorney fees and costs. (Lab. Code, §§ 203, 218.5.) She has asserted nearly identical claims and sought similar penalties from at least four other businesses that have used her modeling services.

Brighton cross-complained, asserting claims for declaratory relief and fraud. Brighton alleged that:

- LA Models "had the authority to act on Hockey's behalf,"
- "Brighton would pay LA Models $3,000 for Hockey's work[] in accordance with an invoice that LA Models would send Brighton,"
- "[t]he invoice would be paid by Brighton directly to LA Models (not Hockey),"
- "LA Models would fully and timely pay Hockey in accord with all applicable laws,"
- neither LA Models nor Hockey indicated that they considered Hockey a Brighton employee,
- Hockey "intended to make a claim against Brighton for Labor Code violations[] unless she was paid directly by Brighton[] at the conclusion of" the photoshoot,
- Hockey "intentionally failed to disclose" her intent to Brighton,
- Brighton did not know of Hockey's intent,

3

- Brighton reasonably relied on Hockey's deception when it followed the terms of the agreement and paid LA Models after receiving an invoice, and
- Hockey's deception harmed Brighton.

Hockey filed an anti-SLAPP motion to strike Brighton's cross-complaint. The trial court granted Hockey's motion as to Brighton's fraud cross-claim, concluding that it arose from protected activity because Hockey's filing of a Labor Code claim was an essential element. The court also concluded that Brighton did not show a probability of prevailing on the cross-claim.

DISCUSSION

Brighton contends the trial court erroneously granted Hockey's anti-SLAPP motion to strike its cross-claim for fraud because: (1) she failed to show that the claim arose from protected conduct, and (2) even if she did, Brighton showed a probability of prevailing. We agree with Brighton's second contention, and do not consider its first.

We independently review whether the trial court properly granted Hockey's anti-SLAPP motion to strike Brighton's cross-claim for fraud. (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 384.) Granting the motion was proper if: (1) Hockey showed that Brighton's claim arose "from any act . . . in furtherance of [her] right of petition or free speech," and (2) Brighton failed to establish a "probability that [it] will prevail on [its] claim." (Code Civ. Proc., § 425.16, subd. (b)(1).) "Only a [claim] that satisfies *both* prongs of the anti-SLAPP statute—i.e., that arises from protected speech or petitioning *and* lacks even

4

minimal merit—is a SLAPP, subject to being stricken under the statute." (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 89.)

Here, even if we assume that Hockey fulfilled her burden of showing that Brighton's cross-claim for fraud arose from protected conduct, reversal is required because Brighton has shown a probability that it will prevail on its claim. To defeat Hockey's anti-SLAPP motion, Brighton was required to show that its claim is "'supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted . . . is credited.' [Citations.]" (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 291.) "For purposes of this inquiry, 'the trial court [was required to] consider[] the pleadings and evidentiary submissions of both'" Hockey and Brighton without weighing "the credibility or comparative probative strength of competing evidence." (*Ibid.*) It was also required to accept Brighton's evidence as true (*ibid.*) and "indulg[e] in every reasonable inference to be drawn from that evidence" (*Nagel v. Twin Laboratories, Inc.* (2003) 109 Cal.App.4th 39, 52). If Brighton's claim had even "'minimal merit'" it should not have been stricken. (*Soukup*, at p. 291.)

The evidence submitted during the proceedings below shows that Brighton's fraud cross-claim has the requisite minimal merit. To defeat Hockey's anti-SLAPP motion to strike its fraud claim, Brighton had to produce prima facie evidence that: (1) Hockey made a misrepresentation, (2) Hockey knew her misrepresentation was false, (3) Hockey intended to induce Brighton to rely on her misrepresentation, (4) Brighton justifiably relied on the misrepresentation, and (5) damages. (*Lazar v. Superior Court* (1996) 12 Cal.4th 631, 638.) Brighton submitted evidence that Hockey made a misrepresentation when

5

she told the company to pay LA Models for her services during the photoshoot upon receipt of an invoice rather than immediately upon her "termination" as an employee when the shoot concluded. It can be inferred that Hockey knew that misrepresentation was false based on her actions. It can also be inferred that Hockey intended for Brighton to rely on her misrepresentation—and that Brighton justifiably did so—given that (a) she instructed Brighton to do so, and (b) her instructions comported with standard industry practices. Reliance on Hockey's misrepresentation damaged Brighton by exposing it to $90,000 in waiting-time penalties plus attorney fees and costs—in addition to the costs Brighton incurred in defending itself against Hockey's lawsuit. No more was required at this stage of the proceedings.

Hockey's attempts to reframe Brighton's cross-claim for fraud are not persuasive. Hockey asserts that Brighton claims that she had a duty to warn the company that she would enforce her rights under the Labor Code if Brighton did not follow the law. But Brighton made no such claim. Instead, Brighton claimed that Hockey committed fraud when she told the company to pay LA Models upon receipt of an invoice rather than paying her directly at the conclusion of the photoshoot.

Hockey also argues that Brighton knew of its duty to pay her at the conclusion of the photoshoot since the invoice LA Models sent said that payment was due "upon job completion." But that "term" was not part of the initial agreement. Rather, it was included in an invoice sent to Brighton more than three weeks after the photoshoot occurred. By that time the alleged fraud had already occurred. Hockey's post-hoc justification thus cannot defeat Brighton's fraud claim at this juncture. Brighton

6

has shown that its cross-claim is supported by the requisite prima facie showing of facts.

DISPOSITION

The trial court's July 1, 2020, order granting Hockey's anti-SLAPP motion to strike Brighton's cross-claim for fraud is vacated.  Upon remand, the court shall enter a new and different order denying Hockey's motion.  Brighton shall recover its costs on appeal.

<u>CERTIFIED FOR PUBLICATION.</u>

TANGEMAN, J.

We concur:

GILBERT, P. J.

PERREN, J.

7

Donna D. Geck, Judge

Superior Court County of Santa Barbara

_____

Browne George Ross O'Brien Annaguey & Ellis, Peter W. Ross and Charles Avrith for Cross-complainant and Appellant.

Excelsior Law, Roger Y. Muse; and Donna Boris for Cross-defendant and Respondent.